IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILLIAM OTERO-VICENTY**,<br>    Plaintiff,<br><br>              v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br>    Defendant. | CIV. NO. 23-1115 (MDM) |

## JUDGMENT

William Otero-Vicenty ("Plaintiff") sought judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration (the "Commissioner"). Pending before the Court is Plaintiff's motion requesting that the Commissioner's decision denying his disability insurance benefits be vacated and the case be remanded for a new determination on his alleged disability. (Docket No. 16).

In this case, the parties have consented to the entry of final judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal being directed to the Court of Appeals for the First Circuit. *See* Docket No. 5. For the reasons espoused more completely below, Plaintiff's motion is **DENIED,** and the Commissioner's decision is **AFFIRMED**.

**I.    Administrative and Procedural Background**

On March 12, 2019, the Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on April 4, 2017. The claim was denied initially on June 28, 2019, and upon reconsideration on September 20, 2019. Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"). On April 7, 2022, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits, finding that he was not disabled as defined by the Social Security Act. Plaintiff appealed that decision to the Appeals Council. The

Appeals Council denied his request for review, thus making the ALJ's decision the final decision of the Commissioner.

Afterwards, Plaintiff sought judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) by filing the above-captioned complaint. (Docket No. 3). He also filed a memorandum of law in support of his allegations that the ALJ's decision was not based on substantial evidence as required by 42 U.S.C. § 405(g) and that the Commissioner erred in determining that he was not entitled to disability insurance benefits. (Docket No. 16). In response, the Commissioner filed a memorandum of law requesting that the Court affirm its decision because substantial evidence supports the determination that plaintiff was not disabled within the meaning of the Social Security Act (the "Act") during the relevant period. (Docket No. 21). The Court initially scheduled the case for oral argument, however, at the request of Plaintiff's counsel, the oral argument was vacated without rescheduling.

To be entitled to disability insurance benefits, an individual must demonstrate that he has a disability that began while he was insured as defined in the Act. *See* 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1).

## II.   **Standard of Review**

Judicial review of Social Security administrative determinations is authorized by 42 U.S.C. § 405(g). The court's function is limited to determining whether the Commissioner's decision is supported by substantial evidence. *Id*. "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence, in turn, is evidence that "a reasonable mind . . . could accept . . . as adequate to support [a] conclusion." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Rodríguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981)).

As the United States Supreme Court recently explained in *Biestek v. Berryhill*:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ___, ____, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid*; see e.g, *Perales*, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 203 L. Ed. 2d 504 (2019). Thus, even if the record could justify a different conclusion, the court must affirm the Commissioner's findings so long as they are supported by substantial evidence. *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) (quoting *Rodríguez Pagán v. Secr'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987)).

That is to say that where the court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld, even if there is also substantial evidence for the plaintiff's position. 20 C.F.R. § 404.1546(c). *See Rodríguez-Pagán*, 819 F.2d at 3 (courts "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence"). Absent a legal or factual error in the evaluation of a claim, moreover, the court must uphold a denial of Social Security disability benefits. *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

In reviewing the record for substantial evidence, courts must keep in mind that "(i)ssues of credibility and the drawing of permissible inferences from evidentiary facts are the prime responsibility of the [Commissioner]," and "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts." *Id.* (internal quotation marks omitted). *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). As such, courts will not second-guess the Commissioner's resolution of conflicting evidence. *See Irlanda Ortíz v. Sec'y of Health and Human Serv.*, 955 F.2d 765, 769 (1st Cir. 1991).

Plaintiff bears the burden of production and persuasion at steps one through four of the sequential evaluation process. At the final step, the burden shifts to the Commissioner. *See Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

After reviewing the pleadings and record transcript, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner." 42 U.S.C. § 405(g).

## III. **Brief Statement of Facts**[1]

   a.   *Biographical facts about the Plaintiff.*

The Plaintiff was born on August 10, 1971 (Transcript[2] "Tr." at 45, 777). As of the date last insured, he was 46 years old, which is defined as a younger individual, that is someone between the ages of age 45 and 49 years. The Plaintiff has at least a high school education (Tr. at 45) and has previously worked as an Agricultural Inspector Grader, DOT 409.687-010, SVP 2, medium unskilled (Tr. at 44).

   b.   *The ALJ's decision in the sequential evaluation process.*

The Social Security Administration ("SSA") uses a five-step evaluation process to determine whether a Plaintiff is disabled and unable to work. At step one, the ALJ found that the Plaintiff did not engage in substantial gainful activity

---

[1] The brief statement of facts was taken primarily from the Plaintiff's brief. Nevertheless, the facts are supplemented throughout the judgment as deemed necessary.

[2] The Transcript can be found at Docket No. 14, but for purposes of this Judgment, reference will simply be made to the appropriate page of the Transcript.

during the period from his alleged onset date of April 4, 2017, through his date last insured June 30, 2018 (Tr. at 26). At step two, the ALJ found that through the date last insured, the Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, fibromyalgia, osteoarthritis, obesity, and a moderate major depressive disorder (20 CFR 404.1520(c) *Id*. The ALJ also found that the Plaintiff's left knee joint disease with a remote history of surgery in 2013 is a non-severe impairment *Id*. At step three, the ALJ found through the date last insured, that Plaintiff did not have any impairments or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 27). Additionally, the ALJ found that the Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that,

> *he needed to use a cane in one hand to walk and stand while he could use the other hand to lift and carry at the sedentary level*. He could occasionally climb ramps and stairs, stoop, kneel, and crouch; and never climb ladders, ropes, and scaffolds or crawl. The Plaintiff was able to frequently push, pull, reach in all directions, bilaterally and frequently perform handling and fingering bilaterally, and occasionally operate foot controls. He could occasionally be exposed to unprotected heights, moving machinery, mechanical parts, or cutting instruments; and could frequently be exposed to humidity, dust, odors, fumes, industrial chemicals, extreme cold or heat and vibration. In addition, the Plaintiff could understand, remember, and carry out simple and repetitive instructions, could maintain attention for 2-hour blocks in an 8-hour workday, and was capable of simple decision-making, and to adapt to simple changes in the work routine. The Plaintiff could occasionally interact with supervisors and with co-workers and could not interact with the public (Tr. 29-30). (Emphasis added).

(Tr. at 29).

At step four, the ALJ found that the Plaintiff was unable to perform any past relevant work (Tr. at 34). At step five, the ALJ determined that, through the date last insured, considering the Plaintiff's age, education, work, experience, and residual functional capacity, there were jobs that existed in significant numbers in

the national economy that the Plaintiff could perform. (Tr. at 45). The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as: *Lens Inserter* (optical goods), (DOT# 713.687-026), a sedentary skilled, SVP-2, with 48,000 jobs in the national economy, *Printed Circuit Board Inspector*, (DOT# 726.684-110), a sedentary unskilled, SVP-2, with 24,000 jobs in the national economy, and as a *Printed Circuit Layout Taker Electronic Equipment* (DOT# 017-684.010), a sedentary unskilled, SVP-2, with 21,000 jobs in the national economy (Tr. at 35-36). As such, the ALJ decided that the Plaintiff was not disabled, as defined in the Social Security Act, at any time from April 4, 2017, the alleged onset date, through June 30, 2018, the date last insured (Tr. at 36).

## IV.   Discussion

In the present case, Plaintiff raises three main claims of error. First, he argues that the ALJ erred by including a limitation in the RFC that provided for the use of a cane to ambulate. Second, he contends that the ALJ failed to discuss the side effects of drowsiness related to the Plaintiff's prescribed use of Seroquel 300. And third, he contends that the ALJ's Mental RFC failed to consider the effects of Plaintiff's auditory hallucinations.

In response, the Commissioner maintains that there is substantial evidentiary support in the record for the ALJ's determinations throughout the sequential evaluation process and therefore the Court should affirm the ALJ's decision.

Ultimately, the Court must decide whether substantial evidence supports the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Act during the relevant period. After careful consideration of the pleadings, the record transcript, and the applicable law, the Court finds as follows.

In his <u>first claim of error</u>, the Plaintiff takes exception with the ALJ's finding in the RFC that he "is able to perform sedentary work, except that he needed to use a cane in one hand to walk and stand while he could use the other hand to lift and carry at [the] sedentary level." (Tr. at 29). The Plaintiff contends that such a

finding is not supported by substantial evidence on the record because he was unable to "find any medical *opinion* [on the record supporting] such a limitation." Docket 16, at 7. (Emphasis added). The Plaintiffs argument is unavailing. The Court explains.

According to 20 CFR 404.1545(a), the RFC is the most a person can still do despite his or her limitations. When assessing an RFC, the Commissioner will consider all of the medically determinable impairments, including the medically determinable impairments that are not "severe." *See* 20 CFR §§ 404.1520(c), 404.1521, and 404.1523. The Commissioner will also consider a claimant's ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of § 404.1545. *See* 20 CFR 404.1545(4). When assessing a claimant's physical abilities, the Commissioner will first assess the nature and extent of the physical limitations and then determine claimant's residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching), may reduce the claimant's ability to do past work and other work. 20 CFR 404.1545(b).

In situations like this, where the ALJ has found that a claimant can perform *less* than a full range of sedentary work, which is typically the lowest level of work that can be performed before a claimant is declared disabled, Social Security Ruling ("SSR") 96-9p provides guidance as to the Social Security Administration's ("SSA") policies for determining the impact on an individual's ability to do other work. More specifically, SSR 96-9p emphasizes that "[a]n RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." *Id.*

Nevertheless,

> a finding that an individual has the ability to do less than a full range of sedentary work *does not necessarily equate with a decision of 'disabled.'* If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.

In this case, that is precisely what the ALJ found, that the Plaintiff had the capability of performing less than the full range of sedentary work because she found that he needed a cane to assist him in walking and standing. The Plaintiff claims, however, that the record is devoid of any medical "opinion" that would support a limitation providing for the use of a cane to walk or stand. Plaintiff's argument is misguided.

To start, the RFC is an administrative assessment—not a medical finding—and as such the ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 144 (1st Cir. 1987); accord Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *Purdy v. Berryhill*, 887 F.3d 7, 14 (1st Cir. 2018). The responsibility for determining a claimant's RFC, therefore, rests solely with the ALJ and is based on the totality of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(1), 404.1546.

With respect to a hand-held device, specifically, SSR 96-9p provides that,

> in order to find that a hand-held assistive device is medically required, there must be *medical documentation* establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. (Emphasis added).

Moreover, SSR 96-9p goes on to state that,

> [s]ince most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers.

*Id.*

As the above quoted language from SSR 96-9p clearly demonstrates, all that is required to support a limitation in an RFC providing for a cane or hand-held assistive device is that 1) there be some "medical documentation" in the record establishing the need for such a device to aid the claimant in walking or standing, and 2) the RFC describe the circumstances for which it is needed. Contrary to plaintiff's argument, a medical "opinion," as such, is not required.

In this case, it is abundantly clear that substantial evidence in the record supports the ALJ's determination for the need of a cane or other hand-held assistive device. Plaintiff's own testimony, as well as other medical evidence on the record shows as much. More specifically, Dr. Roberto Alvarez noted that Plaintiff had an "unsteady gate." (Tr. at 360, 364 & 366). Plaintiff's psychiatrist, Dr. Marie Lugo Cruz, remarked in her physical examinations that Plaintiff ambulated with a one-point cane. (Tr. at 1168, 1313 & 1317). Dr. Lugo Cruz further noted that Plaintiff was able to climb stairs and "ambulate more distances with 1-point cane." (Tr. at 1312). In progress reports from Dr. Josefina Rojas Ruiz, she observed that Plaintiff walked with a cane. (Tr. at 383, 385 & 386). And even before the alleged

onset date, Plaintiff was noted to be using a cane "because of the pain." (Tr. at 391).[3]

Plaintiff also testified as to the need for a cane, stating that he could "easily" walk about an hour with a cane. (Tr. at 98). When asked at the hearing, "Who prescribed a cane," Plaintiff responded that he had a recommendation from Dr. Alvarez because of frequent falls and that it "was pretty much prescribed." (Tr. at 99). Plaintiff's counsel also mentioned a need for a cane to climb stairs and referenced documentation within the record confirming cane usage. (Tr. at 105 (citing Tr. at 1312-23)).

Consistent with such evidence, the Court finds that the ALJ exercised "common-sense" judgment by including a cane limitation in the RFC assessment. *Gordils v. Sec'y of Health & Hum. Servs.,* 921 F.2d 327, 329 (1st Cir. 1990). Indeed, the record has numerous references to Plaintiff's use of a cane, from medical professionals to the Plaintiff himself. Such evidence adequately informed the ALJ's assessment of "[Plaintiff's] ability to do work-related activities" and would persuade a reasonable mind that Plaintiff had the RFC to perform a full range of sedentary work, including using a cane in one hand to walk and stand. SSR 96-8p, 1996 WL 374184, at *3; *see Biestek*, 139 S. Ct. at 1154.

Though the above is dispositive of this claim of error, the Court notes, moreover, that the Plaintiff's complaints over the inclusion of a limitation providing for the use of a cane in the RFC assessment, which is more limiting than without the use of one, is arguably more favorable to plaintiff. Under such circumstances, any alleged error with respect to this matter is harmless. *See e.g., Martínez v. Sec'y of Health & Hum. Servs.*, 915 F.2d 1557 (1st Cir. 1990) ("The ALJ's findings as to exertional capabilities are more favorable to claimant than those reflected in the two RFC's."); *Bowden v. Colvin*, No. 13-201, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("[A] claimant may not obtain a remand on

---

[3] *See* Dr. Alvarez' fibromyalgia questionnaire, wherein Dr. Alvarez noted that Plaintiff needed to use a cane. (Tr. at 1152).

the basis of an RFC that is more favorable to him or her than the evidence would otherwise support.").

For all of these reasons, Plaintiff's first claim of error is without merit.

In his second claim of error, the Plaintiff contends that the ALJ failed to discuss the side effects of drowsiness related to his prescribed use of Seroquel 300, and therefore the RFC lacks substantial evidence on the record. In support of his contention, the Plaintiff argues that "there is an inconsistency in the opinions of Dr. Serrano," a psychological expert who testified during the hearing, which the Plaintiff claims the ALJ failed to address. Docket No. 16 at 14. The Plaintiff submits that during the hearing, Dr. Serrano stated that her opinion as to whether the medicine Seroquel 300 was prescribed for the treatment of Plaintiff's psychosis or whether it was for the treatment of his inability to sleep depended on the frequency with which he was prescribed to take it. She said that "if the issue is to help the claimant sleep and rest, it would have an impact if it's in the daytime, in the morning, and in the evening. Because then he would be sleepy during the day. So, there would be some effects." Docket No. 16, at 15.

The problem, however, was that during the November 2, 2021 supplemental hearing,[4] Dr. Serrano said her notes were not clear enough for her to conclude whether the Plaintiff was taking Seroquel 300 once a day (PO), or twice a day (BID). Then, both the attorney for Plaintiff and the ALJ asked Dr. Serrano if the difference in the frequency of taking the medications *could* make her change her opinion, and she responded in the affirmative. *Id.* at 15. (Emphasis added). Dr. Serrano then explained that,

> [i]t would be important to see how they prescribed it to him, because it's unusual for them to give it twice a day because it causes sleepiness, and we see from the progress notes that one of the constant complaints from the claimant is that, because of the pain, he can't sleep. So, a lot of times, to address this sleep problem, Seroquel is prescribed. It depends on how you are supposed to take it. You said he takes it in the morning and in the afternoon. Some people

---

[4] The November 2, 2021 hearing was a supplemental hearing. The February 2, 2022 hearing was a second supplemental hearing.

>> take it in the afternoon and in the evening to help them get to sleep easier, but it would be important to know how they prescribed it. (Tr. 81).

*Id.*

Then, on February 2, 2021, during a second supplemental hearing before the ALJ, Dr. Serrano was asked by the ALJ if the new evidence showing that Plaintiff was prescribed Seroquel 300 *twice a day* had changed her opinion in the case, and she responded that "it d[id] not." *Id.* at 17. (Emphasis added). Dr. Serrano explained that her opinion in the previous hearing was the same because she hoped to establish whether there were any complaints from the Plaintiff regarding [the] side effects that this may cause. The notes, however, *did not show side effects. Id.* at 17-18. In response to further questioning by the ALJ, Dr. Serrano noted that "I see that she (the doctor) circles again that there's no side effects from the medications." *Id.* at 18.

The Plaintiff submits that the above facts demonstrate an inconsistency in Dr. Serrano's testimony that he claims the ALJ failed to explain. He further contends that such failure and the failure to discuss the Plaintiff's symptoms constitutes reversible error. The Court sees it differently.

In a nutshell, and at its most basic level, the Plaintiff's complaint revolves around an allegation that the ALJ failed to discuss in any way medication side effects, specifically with respect to Seroquel 300. The Commissioner categorically denies such a statement and further submits that the ALJ *did* discuss side effects. More specifically, the ALJ notes that after the Plaintiff reported auditory hallucinations in February and May 2018, Plaintiff had a good response to treatment "with no side effect from medication." (Tr. at 32). Further, in her decision, the ALJ discussed the testimony of Dr. Serrano, specifically that the treatment notes revealed no evidence of side effects. (Tr. at 33-34).

At the supplemental hearing held on November 2, 2021, the question arose as to the how often and when Plaintiff took Seroquel 300. (Tr. at 79-83). Dr. Serrano stated that frequency of the medication could change her opinion. (Tr. at 83). Plaintiff agreed to provide clearer records and the ALJ ordered a second

supplemental hearing. *Id.* At that second supplemental hearing, held on February 2, 2022, Dr. Serrano testified that she read the new information, as well as the rest of the file, and came to the same conclusion as at the prior hearing. (Tr. at 49). Although Seroquel 300 was taken by Plaintiff twice a day, she stressed that the record reflected *no side effects*. (Tr. at 49-50). To be sure, the ALJ asked Dr. Serrano at the hearing if there were any documented side-effects from Plaintiff's medications and Dr. Serrano replied, "No." There are thus no lingering questions or inconsistencies in Dr. Serrano's testimony.

Indeed, the Plaintiff can point to only *one* statement in his hearing testimony related to medication side effects (Docket No. 16, at 19-20)—that his medications "overpower" him at times, and he mentioned falling. (Tr. at 104).[5] On the other hand, however, the record is replete with statements that Plaintiff suffered *no* side effects from any of his medications. For example, in the Pain Questionnaire he completed, Plaintiff indicated that he suffered no side effects to any medication, though he wasn't taking Seroquel at that time. (Tr. at 121). Similarly, on his Function Report, Plaintiff indicated no side effects to any medication. (Tr. at 138). Also, progress notes of Dr. Rojas Ruiz over the course of multiple visits specifically state no side effects to medication. (Tr. at 381-94). Simply put, there is no report or progress note from any doctor where Plaintiff is seen to have adverse side-effects from any medication. To be clear, the record here is devoid of any evidence demonstrating adverse side effects from medication and the Plaintiff has failed to point to any.

---

[5] The full text of Plaintiff's hearing testimony regarding the side effects of the medicines he was taking went as follows:

> CLMT: Yes, those have been from some falls, because even though [INAUDIBLE 00:34:35], I have to take someone with me because sometimes, remember if you have a list of the medications that I use, well there's days when [INAUDIBLE 00:34:50], but there's other days when they overpower you. [INAUDIBLE 00:35:02] medications are a little strong. I'm a little [INAUDIBLE 00:35:11] I can take the medications, but there's days when I can't tolerate them.

(Tr. at 104).

In the present case, furthermore, the ALJ properly considered plaintiff's subjective complaints regarding his alleged side effects from medication and assessed limitations consistent with the evidence as a whole. After evaluating the overall record, the ALJ reasonably found that plaintiff was not as limited as he alleged. As such, the ALJ reasonably found that plaintiff's subjective complaints were unsupported by the bulk of the medical evidence of record. *See e.g. De Jesus v. Sec'y of Health & Hum. Servs.,* No. 91-2169, 1992 WL 137507, at *3 (1st Cir. June 19, 1992) ("[W]e are in no way troubled by claimant's objection that the ALJ impermissibly ignored her testimony" regarding her medication side effects. . . "In the absence of any medical evidence, the ALJ was entitled to disregard claimant's testimony."). *See also Delia Quintana v. Comm'r Soc. Sec.,* Civ. No. 18-1097, 2020 WL 1493894, at *5 (D.P.R. Mar. 24, 2020) (similar).

Additionally, the record here shows that the ALJ considered the intensity, persistence, and limiting effects of Plaintiff's symptoms by examining the entire case record, including the objective medical evidence, statements and other information provided by medical sources and other persons; and other relevant evidence. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). *See* SSR 16-3p, 2017 WL 5180304, at *2; *Martínez v. Comm'r of Soc. Sec.* (D.P.R. Mar. 30, 2021) (finding the ALJ properly "considered several factors," including objective evidence, hearing testimony, and medication usage to evaluate the plaintiff's subjective symptoms).

In this case, on the whole, the Court finds that the ALJ complied with the requisite law by looking at the extent to which the Plaintiff's subjective statements were reasonably consistent with the objective medical evidence in the record. The Court thus finds no merit to the Plaintiff's second claim of error.

In his <u>third claim of error</u>, the Plaintiff contends that the ALJ failed to consider in the mental RFC the effects of his auditory hallucinations. The Commissioner, on the other hand, submits that Plaintiff's claim for error should be denied for two reasons: first, because he has not met his burden of production and persuasion regarding a limitation dealing with auditory

hallucinations, and second, because he failed to demonstrate that his hallucinations meet the durational requirement of lasting for a continuous period of at least 12 months. After careful review of the record, the Court sides with the Commissioner regarding this point and finds no error.

Plaintiff testified at the hearing that during the period of April 2017 to June 2018, he visited Dr. Rojas because he was confused, depressed and anxious. Docket No. 16, at 7. He also testified that he heard voices a lot of times that did not feel good in his mind or heart. He said the symptoms were severe, and it was haunting and made him cry without knowing the reason. *Id.* (citing Tr. at 101).

Plaintiff further testified that "[a] lot of times, they would call me as if it were my son, or a lot of times, they would call me by my last name, and so forth. I was called by my last name at work. Docket No. 16, at 7. Some people know me by William. Some people know me by my son's name, Will. And you go outside, and there's nothing." *Id.* (citing Tr. at 102). The Plaintiff submits that the ALJ failed to consider and discuss these auditory hallucinations. The Court disagrees.

In her decision, the ALJ found that Plaintiff had a severe impairment of, among other things, moderate major depressive disorder. (Tr. at 26). She further determined that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of listing 12.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 28). As part of the RFC, the ALJ determined that Plaintiff could understand, remember, and carry out simple and repetitive instructions; could maintain attention for two-hour blocks in an eight-hour workday; was capable of simple decision-making; could adapt to simple changes in work routine; and could occasionally interact with supervisors and co-workers but could not interact with the public. (Tr. at 29-30).

Though Plaintiff testified that he sought treatment with Dr. Rojas in part because he "heard voices," ( at 101), the symptom of hallucinations is only listed twice in Dr. Rojas's treatment notes covering the relevant period, specifically February 6 and May 7, 2018. (Tr. at 386, 385, respectively). On every other visit with Dr. Rojas during the relevant period, the box for hallucinations was marked

"no." (Tr. at 381, 382, 383, 384, 388). The record reflects, moreover, that the ALJ was cognizant of this symptom as she mentioned it in her decision. (Tr. at 32, 33, 34). More specifically, the ALJ noted that Plaintiff's mental conditions were stable, though there were symptoms "such as the hallucinations that are not present throughout the period and the medications were adjusted but without the need for inpatient care or attendance to emergency rooms or stabilization units that would support the alleged degree of symptoms and limitations." (Tr. at 34). As a result, the ALJ determined that there were some limitations as reflected in the RFC, but Plaintiff's symptoms did not preclude him from performing all work-related activities. *Id.*

Indeed, notwithstanding the two notations in Dr. Rojas' notes reflecting hallucinations, Dr. Serrano testified at the hearing that there was no discussion in the record regarding the impact of those instances of hallucinations. (Tr. 51). While it is clear that Dr. Serrano took hallucinations into consideration (Tr. at 82), she did not opine that any further functional limitations were necessary in view of plaintiff's alleged hallucinations.

As stated above, Plaintiff bears the burden of production and persuasion regarding his limitations. *Freeman*, 274 F.3d at 608; *see also Reyes-Villarini v. Comm'r of Soc. Sec.*, No. 21-1614-MDM, 2023 WL 2214324, at *4 n.1 (D.P.R. Feb. 24, 2023) ("Plaintiff did not satisfy his burden of demonstrating that his condition resulted in greater limitations than those included in the RFC determination"); *Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020) ("Appellant had the burden of establishing the extent of her limitations, which the ALJ then used to determine her RFC. The Commissioner merely had the burden of showing that her RFC, so determined, permitted substantial gainful activity."). While Plaintiff has pointed to some evidence in the record reflecting periodic auditory hallucinations, he has not shown that this symptom is uncontrolled by medication.

More importantly, Plaintiff has neither explained nor demonstrated through evidence of record how this alleged symptom warranted the imposition of

further functional limitations than those found by the ALJ in his RFC. After all, remand is only appropriate if Plaintiff can demonstrate that the [relevant impairment] imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Tyler H. v. Saul*, No 19-00005, 2019 WL 648446, at *3 (D. Me. June 27, 2019) R & R adopted, 2019 WL 3082417 (D. Me. July 15, 2019).

Notwithstanding the above, even if the Court were to find that the Plaintiff *had* met his burden or production and persuasion, the Plaintiff's argument would nevertheless fail as a matter of law for the second reason proposed by the Commissioner–that "plaintiff's impairment(s) and subsequent disabling limitations 'must have lasted or must be expected to last for a continuous period of at least 12 months.'" *Grant v. Colvin*, No. 13-13102-DHH, 2015 WL 4945732, at *10 (D. Mass. Aug. 20, 2015) (emphasis added) (citing 20 C.F.R. § 404.1509 and Barnhart v. Walton, 535 U.S. 212, 214-22 (2002)). The evidence of record simply does not support the existence of auditory hallucinations for a continuous 12 months during the relevant period of coverage.

In sum, for all of these reasons, the Plaintiff's third and final claim of error fails.

## IV. Conclusion

The Court finds that, overall, the Commissioner properly evaluated and considered the entire record of this case and finds that her decision is free from legal error and supported by substantial evidence. Because there is adequate support in the record for the ALJ's conclusion, the Commissioner's decision is **AFFIRMED**. *See Evangelista*, 826 F.2d at 144 (the court must affirm the Commissioner's findings when they are supported by substantial evidence); *Irlanda Ortíz*, 955 F.2d at 769 (holding that a court "must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence as a whole, could accept it as adequate to support his conclusion.") (quoting *Rodríguez*, 647 F.2d at 222); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

**IT IS SO ORDERED AND ADJUDGED.**

In San Juan, Puerto Rico, this 31st day of March 2024.

*s/Marshal D. Morgan*
MARSHAL D. MORGAN
United States Magistrate Judge